This time we'll hear United States v. Le Grier. Good morning. May it please the court, Gwen Schoenfeld on behalf of Deshaun Le Grier. Before I start, I just would like to mention that Mr. Le Grier's family is here with us today. This is, despite it's the guidelines, it's a straightforward case. My client was convicted of felon in possession under 2K2.1 of the guidelines. His base level offense was either going to be a 20 or a 24, depending on whether or not he had a qualifying conviction for a crime of violence or a substance offense. At the time of his sentencing, his criminal possession of a weapon in the second degree, which was a New York conviction, was not a crime of violence for two reasons. One was circuit precedent. You had Johnson and then you had virtually every circuit court that decided the case, that decided whether that applied to the guidelines, all concluded that it did apply to the guidelines and they were void for vagueness. I understand that was overruled, but what makes this case different is the pending guideline amendment. At the time of Mr. Le Grier's sentence— At the time of the sentencing, Beckles had been issued, though. Beckles had not been issued yet. Correct. At the time of the sentencing, just to give you a brief timeline, so the sentencing was on July 27 of 2016. Beckles came out March of 2017. And then the important dates on this, Johnson was June 26 of 2015. The Sentencing Commission issued its proposed amendment nearly a year before he was sentenced. In fact, it was before the verdict. The Sentencing Commission issued its proposed amendment on August 17 of 2015. Six months later, the Sentencing Commission issued its final amendment, saying in six months that amendment would become effective on August 1 of 2016. That was five days after Le Grier's sentencing. And within those five days, you have a weekend. And that's what makes this case different, because there's deficiency here. The lawyer, counsel for Mr. Le Grier, did not mention that. He did not mention precedent. He did not mention the pending guideline amendment. There cannot be any strategic reason for not doing that. And I don't think the government contests deficiency. I think there are issues with prejudice. And in terms of deficiency as well, there's cases where you have pending, whether it was the Fair Sentencing Act or other amendments to the guidelines or the law. Lawyers do it all the time. They ask . . . Assuming then the deficiency, explain the prejudice in terms of the calculation. Okay. So the prejudice in terms of the calculation, his calculation at the time of sentencing, it was calculated at 121 to 151 months. That was the range, which was then reduced to 120, because that was the statutory max. If he had been sentenced at a level 26, which would have taken into account those guideline amendments, his guideline range would have been 78 months to 97. So that is almost two years to three and a half years difference. And the reason that it's prejudicial in this case, there would have been no legal basis for the court to say, I'm not considering the amendment, because you had the precedent at the time. You had the amendment in five days. It was a done deal. Isn't it clear though the district court would have imposed the same sentence anyway? No. I don't think so, because this is what the district court said. The district court said that the defense counsel did not convince the court that anything less than the statutory max of ten years, which was in the guidelines range. That's a quote. And that's page A80 of the appendix. So the statute . . . I don't think the crime charge does justice to the danger the defendant presented. He lied on the witness stand. He had a fulsome criminal history. He fired the gun. Unfortunately, it didn't hit anybody's person. It hit somebody in the clothing and the arm, I think. But it seemed pretty clear that she was going to give him the statutory max anyway. Isn't that right? I don't think so. Because she said that it was within the guideline range. And not only that, if you look at the statement of reasons, it's the same statement. She said she was giving a guideline sentence. She didn't say, I'm giving a statutory max regardless of what the guidelines were. And judges rely on those guidelines even though they're advisory. She specifically said in two different places, one at the sentencing itself in the transcript and the other in the statement of reasons, which is paragraph four, I believe, or section four on page two in the statement of reasons. She specifically said, I'm giving a guideline sentence. And in this case, the guidelines, if you calculated them at a 30, they came out at 121 to 151. So to her, a guideline sentence of 120 was not . . . What's the ineffective rule that you're advocating? Is that if the guideline is going to change to the defendant's favor in five days, that's ineffective assistance of counsel even without an objection by anybody at the sentencing hearing? What if it's two weeks? What if it's a month? What if it's three months? Where do you draw the line and say, even without an objection at the sentencing by defense counsel, it's ineffective assistance of counsel that we can review? Where do we draw the line at? I don't know that you have to draw a hard and fast line, but I do know in this case where you have five days, an intervening weekend, it was a done deal. You had well-publicized guideline amendments. And Johnson and the guideline amendments, this wasn't some obscure aspect of the guidelines. This was a huge deal in the defense bar and criminal bar as a whole. What about Beckles then? Shortly thereafter, Beckles has decided and said there's no vagueness challenge to guidelines anymore. But the guidelines had already changed. So had the court considered the guideline change? This is not a case like Fretwell, which the government cites, where the defendant was seeking a remedy that the law no longer recognized. Mr. Laguerre is seeking a remedy that the law recognized then, and it recognizes now, and it hasn't changed. At the time of his sentence, you had both. You had precedent, and you had the guideline amendment. If we didn't have the guideline amendment, I understand because of Fretwell, on appeal, we would have an issue. But that guideline amendment, which was publicized, which was due to take effect in five days, that makes the difference. Would two weeks have made a difference? I don't know, but we're at five days. Five days clearly has to. And you have the case that I submitted by letter, the Abney case in the District of Columbia Circuit, which did find that a defense attorney who failed to raise the fact asked for a continuance in that case. He wasn't even asking for it. It wasn't a consideration issue. He did not ask for a continuance knowing that the Fair Sentencing Act was going to be effective within a matter of days and would change the client's sentence, or there was a reasonable likelihood it would change the client's sentence. And in this case, you have the same thing. You have that amendment. Everybody, he didn't know about it, I guess, but the people who are federal practitioners do. And you're required, as a federal practitioner, to be familiar with the sentencing guidelines. And I know that they're confusing and complex, but in this case, there was no confusion here. You had Johnson and you had the amendment. It wasn't . . . this was black and white. You've reserved three minutes rebuttal. Thank you very much. We'll hear you then. Good morning. May it please the Court. My name is Hagen Scotton. I'm an Assistant United States Attorney in the Southern District of New York. I represent the government here, and I represented them in the District Court. Very briefly, I think, for a lot of the reasons Judge Droney stated, this case can easily be resolved on the prejudice ground. We do think the argument that . . . Which one? That the judge would have given the same penalty? Yes. It has to be really clear, though, doesn't it? Our cases say that it's got to be clear what the sentencing judge said, that even if I'm wrong about the guidelines calculation here, I would give the same sentence, something like that. I don't know how . . . is it that clear that she would have done that? I think it is that clear, but for a slightly different reason. It's not just the wording of what the judge said, Your Honor. If . . . imagine that this case was remanded. Imagine that the petitioner got the relief they seek. The District Court judge would apply the same guidelines on remand under 18 U.S.C. 3742. It's clear as day that the same guidelines apply, and the District Court judge correctly calculated the guidelines. Now, there's a missing step, because at the time, the District Court judge could have gone with Johnson, and then there would have been Beckles. And that's exactly what happened in Jones, Your Honor, which is actually the same case that the appellant relies on in Jones. Jones himself didn't get the benefit of Jones, because in the end, Beckles came along, and this Court said, well, the guidelines, in effect, at the time of your sentencing, the 2015 guidelines, contain the residual clause. Under Beckles, the residual clause is good law, and so the District Court correctly applied the guidelines. The same thing happened here. If you gave the . . . You're saying that you wouldn't apply the Level 20 because this amendment was not retroactive. Is that why? That's correct, Your Honor. It's only five days still. But as Your Honor said, you have to draw the line somewhere, and that's at the days. When counsel says the District Court could have considered the amendment, I don't think she could be saying the District Court could have given effect to the amendment. That would have been error. You can't look forward five days and apply different guidelines. I don't understand her. Maybe she did. At least the core of her argument, I don't think, is that the judge would have applied a future guideline, is that the counsel was ineffective for not asking for a brief continuance, knowing the amendment was coming in five days. So I think, Your Honor, my opponent has said both, either that it could have been considered at the time, I think Your Honor is right, that would have to be more of a consider it under Section 3553A, not give effect to it, or the appellant could have asked for an adjournment. We didn't get that anywhere in our opening brief. The opening brief says consider. It doesn't say adjourn. So I do think that claim is waived. Secondarily, I think that is very much the kind of claim that this Court routinely says should be brought into 2255 because would the District Court have given an adjournment? Could counsel have gotten an adjournment? I think all of these things are fact-specific. And not to get into the fact argument, but just to give the Court an idea why that's so factual. Among other things, the Defendant's counsel had already sought four adjournments prior to this date. Those are docket entries 62, 64, 65, and 68. And when he sought the last adjournment, Judge Abrams specifically said no further adjournments will be granted. So it is by no means clear that the Defendant's attorney could have come before Judge Abrams and said, you know, I want a fifth adjournment so that I can get better guidelines that are not in effect now, but that would benefit me in the future. And there's a particularly good reason to think that would have been persuasive. Given the guidelines change here, unlike all the cases my opponents cite, was not aimed at reducing penalties that anybody thought were too harsh. My opponent relies on cases concerning mostly crack cocaine, also one money laundering case, where the guidelines were changed because people thought that offenses were being punished too harshly. No one thinks, and certainly Judge Abrams did not think, that shooting at people with an illegally possessed weapon was being punished too harshly. Rather, the guidelines were changing essentially because they were difficult to apply, they were too vague, in other circumstances. So it's entirely unclear why a district court would have granted a fifth adjournment to give the Defendant the benefit of guidelines that didn't really have any purpose driving at his offense. And I do think at the end of all that, because the sentencing was in 2015 before those guidelines, there simply can't be prejudice because the district court correctly calculated the guidelines, the same guidelines would apply now, and the district court gave a statutory maximum sentence with good reason under the same guidelines that apply right now. I understand you say that to the extent she is arguing there should have been a continuance requested and he was ineffective for not doing it, that should be raised on 2255? I think that's right, Your Honor. Wouldn't you be, if she did that, wouldn't you be saying it should have been raised on direct appeal? So I don't think so. The government agrees that's a collateral attack. I do think that's a collateral attack. It's the kind of thing this Court says, and we often tell this Court, should not be considered in direct appeal because the district court in the first instance should be able to look at the facts. It's typically the sort of situation where the district court would say to LaGuerre's original counsel, send me an affidavit, give me your strategic reasons, if any, for why you didn't seek an adjournment, and then the district court can say . . . What could that be? What could that affidavit be? I mean, how would that be helpful? Usually we want to hear what counsel told the Defendant. What's he going to say here? I knew that it was going to be in effect in five days, and I thought it was better to get sentenced now? I think what he might say is I was pretty sure Your Honor wasn't going to give me a fifth adjournment since you quite directly told me you were not going to grant any further adjournments, and given that the argument was at sentencing really about what is the just sentence here and not what are the guidelines. As Your Honor indicated, even if the district court certainly properly considered the guidelines, the district court also said a statutory maximum sentence was necessary. I don't . . . I think a reasonable counsel might, we don't know because there's no fact development yet, but might have said, you know, I'm not going to ask for a fifth adjournment when I've been told I'm not going to get one. Rather, I'm going to make the best arguments I can since I'm clearly trying the district court judge's patience with seeking these adjournments. He would have put on the record, I'm aware that there's a new guideline amendment that goes into effect in five days, but I think it's, in my considered judgment, better to proceed today. Nobody recognized this, including the government, right? I think that's right. No one did recognize this, but given that in the end the guidelines were correctly calculated, even if this court were to think there's a possibility of deficient performance, there certainly isn't prejudice. What if he says I was totally unaware of the amendment? Then the inquiry is, I think, entirely at the prejudice stage. I mean, I think . . . Then he's ineffective. Well, he's not ineffective, Your Honor, because ineffectiveness has two prongs. He performed efficiently, but there wouldn't be prejudice because it is unclear at best that simply telling the district court, there's going to be a change to the guidelines for reasons that have nothing to do with suggesting my client is being punished too harshly, but I'd like to be, I'd like the court to be aware of that. This court said in Mayo v. Henderson, counsel doesn't have to raise every non-frivolous argument. They only have to raise clearly and obviously strong ones to avoid an ineffectiveness finding. Here, it's not at all clear that saying that would have had any effect on the sentence, and again, because we're arguing based essentially on the defendant's reply brief and a presentation oral argument, at the very least, I think this is better considered in the district court in the first instance, and I think there there's . . . I think it's fairly clear, actually, the district court would conclude there's no prejudice, but I do think the district court should get the first crack at that. Can I just ask you about forfeiture? You seem to be arguing that this five-day argument was forfeiting because it wasn't raised in the principal brief. Is that right about that? That's correct, Your Honor. But on page five of her brief, she said that on January 16, 2016, the Senate Commission issued the amendment just five days, et cetera, after Legrave's sentencing. Why isn't it raised then? So I think simply saying the fact that something occurred under this Court's cases is not sufficient to raise an argument. The arguments that I've tried to present to this Court now are essentially a response to things raised in reply and even an oral argument. It is not clear to me why . . . it was not clear to me until this morning what the defendant's argument was that there was going to be prejudice from failure to raise this argument. Counsel simply says in her opening brief . . . I asked the Court to consider the pending amendment. Why isn't that at least raising the issue in the principal brief? Well, I think, Your Honor, this Court's cases have required what it terms developed argumentation. That developed argumentation is obviously not a hard and fast standard, and if the Court says that's developed argumentation, then I suppose it is. But to my mind, simply saying the district court could have considered it and not saying, and if it had done so, you know, it likely would have given LaGreer a lower sentence because of X, or it would have applied the guidelines there are five days in the future because there's just . . . explaining why the district court would have actually taken this into account does not develop an argument. I think Your Honor has quoted the sentence that comes closest to preserving the argument, but it is a single sentence with no, in my view, developed argumentation. Subject to the Court's questions, I reserve the remainder of my time. We'll hear rebuttal. Thank you. A couple things. First of all, when there's a pending amendment or change in the law, there's different ways of dealing with it at the sentencing. You have a request for a variance, now that the guidelines are advisory, so it could have been done in that way. I don't think that counsel would have said I want a variance in this case had he been familiar with the law, because here the law was that it was void for vagueness, that the Crime of Violence Residual Clause was void for vagueness, so he wouldn't have even had to ask for a variance, but he should have raised both issues. He should have said, look, this is the current law, there's a pending amendment, I win under both. The guidelines were not calculated correctly as of that point in time for both of those reasons. And if we went back to court now, the prosecutor is correct that the same version of the guidelines would apply. However, the court can consider the variance that it never considered before. Today it would be called a variance if it went back, and under Pepper, the courts are allowed to consider variances in post. If he had said it's improper because of vagueness, wouldn't the government have had an appeal? No, no. The government, in fact, at that point in time, the government was conceding all over the country that the guidelines were void for vagueness for the same reasons that the Armed Career Criminal Act was void for vagueness that had the same residual clause. The government took that position, in fact, in Beckles, which is why the Supreme Court had to appoint counsel to argue the opposing view. So no, the government wouldn't, and at the oral argument in Beckles, I believe the government said, we are not going to go back and try to reverse any of these cases. So no, the government was not going to do anything to those cases that got decided then. And in this case, you still had the guideline amendment. Under the advisory guidelines, the court could have said, yes, you know what, I am going to consider the pending amendment, the current state of the law, and this is the calculation that I am going to come up with, whether you call it a variance or whatever, and courts have done that, and I cited that in my brief. I just cited a few examples. I can certainly cite many more. So to say that it wouldn't have mattered, and if we go back to court, we're in the same position? No. If we go back to court, we're in the same position as if counsel was not ineffective. What do you say about his point that this whole matter belongs in a collateral attack? I know that this court is reluctant to address issues of ineffectiveness under direct appeal, but in this case, every single fact relevant to this is on the record. There is no strategic reason for not raising this at the time. Defense counsel was arguing, the government at the time had argued for a level 32. Defense counsel was arguing for a level 22. He was successful on one issue about risk of flight and the danger, which reduced it by two levels, but to get to the other eight levels down, he asked for acceptance of responsibility after the defendant testified. Not allowed. He challenged the fact that the judge was making findings by preponderance of the evidence at sentencing. The judge is allowed to do that. Why raise two losers when you have a winner? There is no strategic reason for his failure to have raised this except for the fact that he was not aware. If he says, I didn't know about that pending amendment, we don't have that fact before us, do we? You do not have that fact, but there is no, you need a strategic reason. The prosecutor has not raised one. I can't think of one. I can't think of a single strategic reason for not raising this. And the court didn't have to go. Aren't you better off if his reason is ignorance rather than the lack of a strategic reason? I think his reason has to be ignorance because I can't think of a strategic reason. And in these cases, I've had ineffectiveness issues come up before, and I understand that there may be things outside the record. There may be a reason. There's no strategic reason for not raising an absolute winner of an argument. The judge could have just said, you know what? I understand what the law is. I'm calculating the guidelines. And she still could have given whatever sentence she was going to give, which in this case I believe would have been lower than 120 because she said she was relying on the guidelines. And she gave a guideline sentence. If you give a guideline sentence and you say you're giving a guideline sentence and the guideline should have been lower, there is a reason. I don't have to prove definitively. There is a reasonable probability that that sentence would have been lower. I would like for the district judge at least two opportunities, one to say I wouldn't have given a continuance, possibly is there, but at least she could decide that. And then to say, and even if I had given a continuance, I would have given the same sentence. We don't have the district judge's view on either of those questions. That's correct. But right now, on ineffective assistance, I have to prove a reasonable probability. She could have granted a continuance. She could have just considered the fact of the state of the law and the pending amendment without a continuance. That would have been fine. And courts have done that. Courts in cases that have come before this court, and they've done it in the district courts. I've done it before. These things, this is commonplace, which may be why I couldn't find any other cases that were in this situation, because I think everyone was raising this issue. Either for consideration of the sentencing before the pending amendment came effective, or asking for continuances. So there is absolutely a reasonable probability that she would have given a different sentence had the guidelines been not just a few months lower, but nearly two years to three and a half years lower. Might she have given a year less? It's certainly possible. She could have sentenced him at the high end of the guideline range, and it still would have been lower than 120. If the guidelines were calculated properly at 78 to 97, it's still 13. It's 23 months lower than 120. So she still could have sentenced him at the higher range, and I think that shows a reasonable probability. And there is no strategic reason for not raising it. It has to be ignorance. There is none, and the government hasn't come up with one either. Thank you. Thank you very much. We'll reserve decision.